**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**CLARISSA AND ROBERT HERNANDEZ,**
**On behalf of themselves and others similarly situated,**
**SHANNON WOODWORTH, on behalf of**
**herself and others similarly situated,**
**DAVID GALLEGOS, on behalf of himself**
**and others similarly situated,**

      **Plaintiffs,**

**v.**                                **Case No. 2:20-cv-00942-JB-GBW**

**MICHELLE LUJAN GRISHAM,**
**Individually, Acting Under the Color of Law,**
**RYAN STEWART,**
**Individually, Acting Under the Color of Law,**
**KATHYLEEN M. KUNKEL,**
**Individually, Acting Under the Color of Law,**
**and the STATE OF NEW MEXICO,**

      **Defendants.**

**DEFENDANTS' MOTION TO DISMISS GOVERNOR**
**LUJAN GRISHAM, SECRETARY KUNKEL, AND SECRETARY STEWART**

      Defendants Governor Michelle Lujan Grisham, Secretary Ryan Stewart, Secretary Kathyleen Kunkel (collectively, "Defendants"), by and through their counsel of record, hereby submit their motion to dismiss Plaintiffs' Amended Original Complaint and Request for Temporary Restraining Order [Doc. 4] ("Amended Complaint" or "Am. Compl.") as it relates to the Governor, Secretary Kunkel, and Secretary Stewart pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiffs oppose this motion. As grounds for this motion, Defendants state as follows.

## INTRODUCTION

Plaintiffs (who are not doctors or public policy officials) challenge the Public Education Department's ("PED") scientifically based reentry guidance for public schools. Specifically, Plaintiffs ask the Court to invalidate the PED's guidance temporarily postponing in-person learning in certain counties due to their failure to meet objective gating criteria. As explained in detail below, Plaintiffs fail to meet the requirements for Article III standing with regard to the Governor, Secretary Kunkel, and Secretary Stewart, and additionally fail to state a § 1983 claim against the Governor and Secretary Kunkel for which relief may be granted. Therefore, all of Plaintiffs' claims against the Governor Lujan Grisham, Secretary Kunkel, and Secretary Stewart should be dismissed.

## BACKGROUND

### I.  New Mexico's public health emergency orders

As this Court is undoubtedly familiar with the dangers of the ongoing public health crisis, Defendants confine their review of the facts to those pertinent to this motion. On March 11, 2020, the Governor declared a public health emergency in response to the COVID-19 pandemic under the Public Health Emergency Response Act (the "PHERA"), NMSA 1978, §§ 12-10A-1 to -19 (2003, as amended through 2015), and invoked the All Hazards Emergency Management Act (the "AHEMA"), NMSA 1978, §§ 12-10-1 to -10 (1959, as amended through 2007), by directing all cabinets, departments, and agencies to comply with the directives of the declaration and the further instructions of the New Mexico Department of Health (the DOH).[1] Consistent with the powers

---

[1]  Governor Michelle Lujan Grisham, *Executive Order 2020-004* (March 11, 2020), https://cv.nmhealth.org/wp-content/uploads/2020/03/Executive-Order-2020-004-r.pdf;   *New Mexico closes K-12 public schools to prevent potential spread of COVID-19,* PED (March 13, 2020) https://webnew.ped.state.nm.us/news-releases/.

provided during an emergency under the PHERA and the AHEMA, as well as the Public Health Act (the PHA), NMSA 1978, §§ 24-1-1 to -40 (1973, as amended through 2019),[2] the Secretary subsequently entered a series of public health orders (PHOs) encouraging New Mexicans to stay in their homes to the greatest extent possible and to practice all possible precautions when they are required to enter public spaces.[3]

Immediately after declaring a public health emergency, the Governor ordered the closure of all public schools from March 16, 2020 to April 6, 2020 as a means of proactively implementing social distancing tools to slow the spread of the virus.[4] On March 26, 2020 the Governor ordered the closure of all public schools for the remainder of the 2019-2020 school year due to the increase in confirmed COVID-19 positive cases.[5] All New Mexico public schools completed the 2019-2020 school year using remote instruction and at home learning.[6] The Governor has not issued any executive order affecting public schools since the March 26 order.[7]

---

[2] The PHA broadly authorizes the Secretary—as head of the DOH—to "control and abate the causes of disease, especially epidemics," "respond to public health emergencies," "maintain and enforce rules for the control of conditions of public health importance," and "do all other things necessary to carry out its duties." § 24-1-3(C), (F), (Q), (Z).

[3] *See generally Public Health Orders and Executive Orders*, DOH, https://cv.nmhealth.org/public-health-orders-and-executive-orders/ (last visited July 7, 2020) (collecting PHOs and executive orders relating to COVID-19).

[4] Governor Michelle Lujan Grisham, *Executive Order 2020-005* (March 13, 2020), https://www.governor.state.nm.us/wp-content/uploads/2020/03/Executive-Order-2020-005.pdf.

[5] Governor Michelle Lujan Grisham, *Executive Order 2020-012* (March 26, 2020), https://www.governor.state.nm.us/wp-content/uploads/2020/03/MLG_EO_2020_012.pdf.

[6] *Governor: K-12 school closings must continue to prevent potential spread of COVID-19*, (March 27, 2020) https://www.governor.state.nm.us/2020/03/27/governor-k-12-school-closings-must-continue-to-prevent-potential-spread-of-covid-19/.

[7] *See generally Public Health Orders and Executive Orders*, DOH, https://cv.nmhealth.org/public-health-orders-and-executive-orders/ (last visited Oct. 2, 2020) (collecting PHOs and executive orders relating to COVID-19) [hereinafter *Public Health Orders and Executive Orders*].

In addition, Secretary Kunkel exercised her broad authority under the PHA to "close any public place and forbid gatherings of people when necessary for the protection of the public health"—authority which the New Mexico Supreme Court has upheld[8]—by issuing PHOs prohibiting most public and private gatherings of any significant size and curtail or even prohibit the operations of many businesses. *See* § 24-1-3(E). The restrictions imposed by the PHOs on businesses have varied over the past few months based on the trajectory of the virus. Of import to the instant matter is that the PHO is now—and has always been—absent of any directive limiting operation of public schools.[9]

## II.  PED Promulgates Reentry Guidance for Schools

PED is a constitutionally created entity generally authorized to "have control, management and direction of all public schools." NMSA 1978, § 22-2-1(A) (2004); *see* N.M. Const. Art. XII, Sec. 6(A) (creating PED, which "shall have such powers and duties as provided by law"); N.M. Const. Art. XII, Sec. 6(D) ("The secretary of public education shall have administrative and regulatory powers and duties, including all functions relating to the distribution of school funds and financial accounting for the public schools to be performed as provided by law."); NMSA 1978, § 22-2-1(A) (2004) ("The secretary is the governing authority and shall have control, management and direction of all public schools, except as otherwise provided by law."); NMSA 1978, § 22-2-2 (2004) (providing that the PED shall "determine policy for the operation of all

---

[8] *See* Writ of Superintending Control, *Lujan Grisham v. Romero*, No. S-1-SC-38396 (N.M. Sup. Ct. Aug. 26, 2020); Writ of Superintending Control, *Lujan Grisham v. Reeb*, No. S-1-SC-38336 (N.M. Sup. Ct. Aug. 4, 2020); *see also* Chris McKee, *Supreme Court rules governor has authority to restrict, ban indoor dining* (Aug. 26, 2020), https://www.krqe.com/health/coronavirus-new-mexico/supreme-court-to-hold-hearing-on-public-health-order-business-restrictions/   (reporting that "[t]he New Mexico Supreme Court ruled . . . that the state does have the power to enact a Public Health Order and restrict or close indoor dining at restaurants").

[9] *See generally Public Health Orders and Executive Orders*, *supra* note 7.

public schools . . . [and] supervise all schools and school officials coming under its jurisdiction"); NMSA 1978, § 22-2-8 (2003) (providing that the "[PED] shall prescribe standards for all public schools in the state" including standards for "organization and administration of education," "the physical condition of public school buildings and grounds," and "educational facilities of public schools").

In late June of 2020, the PED issued its official reentry guidance (the "Reentry Guidance") to ensure that public school districts and charter schools were operating safely during the 2020-2021 school year. *See* Reentry Guidance attached hereto as Exhibit A. The Reentry Guidance utilizes a phased approach to school reentry in order to permit the State to analyze the incremental impact of reentry. *Id.* at 4. Public schools may operate in one of three primary reentry categories: (1) remote, (2) hybrid, and (3) full reentry.[10] *Id.* at 9. The remote category requires students to engage in remote learning with the possible exception of small groups of special education and K-3 students; the hybrid category permits in-person learning to the extent that students can be spaced six feet apart or 50% of classroom capacity; and the full reentry category permits in-person learning for every student five days per week. *Id.* at 9-10.

For any public school district or charter school to begin in-person teaching under the hybrid model: (1) the State must continue to meet certain gating criteria;[11] (2) the county in which the school is located must have a test positivity rate and new daily case rate below a certain threshold;

---

[10] The PED added a fourth, transitioning category, which permits elementary schools serving grades Pre-K through 6 to transition to the hybrid model after September 8 while requiring middle and high schools serving grades 6-12 to remain in the remote category until a later date yet to be determined based on public health conditions. *See Reentry Guidance Addendum A*, attached hereto as Exhibit B.

[11] The State gating criteria may be found at: https://cvmodeling.nmhealth.org/public-health-gating-criteria-for-reopening-nm/.

(3) the school must have a "PED-approved plan demonstrating that their instructional, social-emotional and family engagement processes are documented and established"; and (4) the school must "provide [PED] assurances that they've established comprehensive safety and response protocols, including COVID-Safe Practices for students and educators, provision of personal protective equipment, cleaning procedures and rapid response procedures in the event of a positive COVID-19 case."[12] As of the date of this motion, certain counties cannot operate in the hybrid category because they have high rates of COVID transmission.[13] Importantly, however, many school districts have voluntarily chosen to remain in the remote category despite meeting the criteria to transition to the hybrid category under the Reentry Guidance.[14]

## III.   Plaintiffs' claims in this case

Plaintiffs brought the instant action challenging the Reentry Guidance's temporary delay of in-person instruction at public schools in counties with high rates of COVID transmission. *See* Am. Compl. at 1-2, 3 ¶ 10. As the basis for their action, Plaintiffs claim Defendants are violating

---

[12] *Schools in 25 counties may launch hybrid model Sept. 8*, State of New Mexico, (Sept. 3, 2020) https://www.newmexico.gov/2020/09/03/schools-in-25-counties-may-launch-hybrid-model-sept-8/; *Back-to-School FAQs*, PED (Sept. 4, 2020) https://webnew.ped.state.nm.us/wp-content/uploads/2020/09/NMPED-reentry-FAQ-9-4-20.pdf.

[13] *See COVID-19 in New Mexico*, DOH, https://cvprovider.nmhealth.org/public-dashboard.html (last visited Sept. 28, 2020); *School Reentry Status*, PED (Oct. 1, 2020), https://webnew.ped.state.nm.us/wp-content/uploads/2020/10/Reentry-by-District-10-2-20.pdf.

[14] *See School Reentry Status*, *supra* note 19 (showing that many schools in school districts currently allowed to participate in hybrid learning remain in the remote learning category); *see also* James Barron, *Many Districts in Northern New Mexico delay partial return to classrooms*, Santa Fe New Mexican (Sept. 8, 2020), https://www.santafenewmexican.com/news/coronavirus/many-districts-in-northern-new-mexico-delay-partial-return-to-classrooms/article_1ebef7b6-f1eb-11ea-a8f5-db11de1b0d06.html; *APS Extends Remote Learning Through First Semester*, Albuquerque Public Schools (Aug. 19, 2020), https://www.aps.edu/schools/aps-reentry-plan/aps-extends-remote-learning-through-first-semester.

the Equal Protection clause, the Due Process clause, and the Individuals with Disabilities Education Act ("IDEA") 20 U.S.C. §§ 1400 et.seq. *See id.* at 1-2. Specifically, Plaintiffs allege (without basis):

> The actions of the Defendants, all of them, acting individually under the color of law (the Governor acting through her executive orders, the Secretary of Health's Public Health Act and Public Health Emergency Response Act order and the Secretary of Education's guidelines or operating order for New Mexico's public schools,) to close certain counties schools to in-person learning, are arbitrary and capricious, lacking any justification in law or science, and were done in retaliation for punitive purposes based upon a perception that these communities were defying the authority of the Governor.

Am. Compl. at 6-7 ¶ 21. Plaintiffs request the Court issue a declaratory judgment that: Defendants have unlawfully denied the school children in the high-COVID rate counties "a free and uniform public education without providing them owing due process of law;" "equal protection of the law without reasonable justification for doing so in an arbitrary and capricious manner;" and a " [free and appropriate public education] in violation of the IDEA[.]" *Id.* at 15. Plaintiffs further request a preliminary and permanent injunction "enjoining Defendants from prohibiting in-person instruction," as well as attorneys' fees. *Id.*

### DISCUSSION

I.     **Standard of review for a motion to dismiss under Rules 12(b)(1) and 12(b)(6)**

A.     **Rule 12(b)(1) standard**

"Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citation omitted). Federal district courts have original jurisdiction over all civil actions arising under the constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 1331. "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th

Cir. 1974) (citation omitted). As federal courts are ones with limited jurisdiction, there is a presumption against jurisdiction and the party invoking jurisdiction bears the burden to prove it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Generally, a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) takes one of two forms: a facial attack or a factual attack. *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Defendants' arguments under Section II of this motion entails a facial attack on the Court's subject matter jurisdiction. "[A] facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court "appl[ies] the same standards under Rule 12(b)(1) that are applicable to a Rule 12(b)(6) motion to dismiss for failure to state a cause of action." *Muscogee Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010).

## B.   Rule 12(b)(6) standard

The Court must dismiss a complaint under Rule 12(b)(6) if it fails "to state a claim upon which relief can be granted." When examining a complaint under Rule 12(b)(6), the Court must determine "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). In doing so, the Court should "consider the complaint as a whole, along with the documents incorporated by reference into the complaint." *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1146 (10th Cir. 2015). Moreover, if "a complaint does not reference or attach a document, but the complaint refers to the document, and the document is central to the plaintiff's claim, the defendant may submit an "indisputably authentic copy to the court to be considered on a motion to dismiss.'" *Harjo v. City of Albuquerque*, 307 F. Supp. 3d 1163, 1185 (D.N.M. 2018) (Browning, J.) (quoting *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)). The Court may also

properly consider facts of which it may take judicial notice, such as its own files and records and those facts which are a matter of public record, such as government publications. *Id.* at 1185; *see Clappier v. Flynn*, 605 F.2d 519, 535 (10th Cir. 1979) (stating that the district court properly took judicial notice of a government publication).[15]

The United States Supreme Court has clarified that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks and citation omitted). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Mocek v. City of Albuquerque*, 813 F.3d 912, 921 (10th Cir. 2015) (stating that in reviewing a 12(b)(6) motion, courts should "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable"); *FDIC v. Dee*, 222 F. Supp. 3d 972, 1014 (D.N.M. 2016) (Browning, J.) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."). Rather, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption

---

[15] This Court may consider the Reentry Guidance and the Addendum A without converting this motion to dismiss to a motion for summary judgment. These documents are an official government publication and the source of each of Plaintiffs' causes of action. *See Harjo*, 307 F. Supp. at 1185 (Browning, J.) ("[W]hen the plaintiff fails to introduce a pertinent document as part of her pleading . . . the defendant may introduce the document as an exhibit to a motion attacking the sufficiency of the pleading." (quoting 5A Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure* § 1327, at 438-39 (3d ed. 2004); *Ruff v. Bd. of Regents of the Univ. of N.M.*, No. 16-CV-1140 MCA/LF, 2018 U.S. Dist. LEXIS 11187, *13-14, (D.N.M. January 24, 2018) ("When public records are referenced in the complaint, a court reviewing a motion to dismiss may consider such documents.").

that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 555 (2007). "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense" to decide whether any well-pleaded facts have shown any entitlement to relief by "permit[ting] the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679; *see also Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) ("[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." (emphasis in original)).

## II. This Court lacks jurisdiction over the Governor, Secretary Kunkel, and Secretary Stewart because Plaintiffs fail to demonstrate the requirements for Article III standing

Article III of the U.S. Constitution restricts the federal courts to the adjudication of "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1.  "To establish Article III standing, a plaintiff must show that: (1) she has suffered an 'injury in fact' . . . (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by the relief requested." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167 (2000); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998); *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)). "'[A] plaintiff who raises multiple causes of action must demonstrate standing for each claim he seeks to press.'" *Constitution Party v. Aichele*, 757 F.3d 347, 360 (3rd Cir. 2014) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). Thus, plaintiffs suing multiple defendants must demonstrate standing vis-à-vis each defendant. *See Mahon v. Ticor*

*Title Ins. Co.*, 683 F.3d 59, 65-66 (2d Cir. 2012) (affirming dismissal of two defendants and rejecting that "a plaintiffs injury resulting from the conduct of one defendant should have any bearing on her Article III standing to sue other defendants"); *Reniger v. Hyundai Motor Am.*, 122 F. Supp. 3d 888, 895 (N.D. Cal. 2015) ("[W]here there are multiple defendants and multiple claims, there must exist at least one named plaintiff with Article III standing as to each defendant and each claim."). Where a defendant challenges standing, the Court must presume lack of jurisdiction "unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (internal quotation marks and citation omitted). "It is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings but rather must affirmatively appear in the record." *Phelps v. Hamilton*, 122 F.3d 1309, 1326 (10th Cir. 1997). In this case the Court lacks subject matter jurisdiction as Plaintiffs fail to demonstrate the required elements of standing in their claims against Defendants.

### A.     Plaintiffs fail to demonstrate their injuries are fairly traceable to the Governor and Secretary Kunkel

 "The principle of causation for constitutional standing requires a plaintiff's injury to be fairly traceable to the challenged *action of the defendant*, and not the result of the independent action of some third party not before the court." *Bronson v. Swensen*, 500 F.3d 1099, 1109 (10th Cir. 2007) (internal quotation marks and citations omitted). "To satisfy the traceability requirement, the defendant's conduct must have caused the injury." *Aptive Envtl., LLC v. Town of Castle Rock*, 959 F.3d 961, 977 (10th Cir. 2020) (internal quotation marks and citations omitted). "Although a defendant's alleged misconduct need not be the proximate cause of a plaintiff's harm, Article III does at least require proof of a substantial likelihood that the *defendant's conduct* caused plaintiff's injury in fact." *Bronson*, 500 F.3d at 1109 (internal quotations marks and citation omitted).

Plaintiffs' alleged injuries from the temporary suspension of in-person learning in schools cannot be fairly traced to the Governor or Secretary Kunkel. That truth is reflected in the paucity of allegations contained in the operative pleading that address either of them.  Indeed, Plaintiffs' Amended Complaint is devoid of any allegations that the Governor issued an executive order or that Secretary Kunkel enacted a public health order regarding public schools or the temporary suspension of in-person learning for the 2020-2021 school year. *See generally* Am. Compl. Instead, all of the alleged violations stem solely from the criteria for school reentry set forth in PED's Reentry Guidance. *See id.*

Instead of taking on the relevant facts, Plaintiffs proffer only conclusory assertions that "the Governor of New Mexico pursuant to the her authorities under the Public Health Emergency Response Act, her Secretary of Health's authorities under the Public Health Act and the authorities vested in her Secretary of Education issued [the Reentry Guidance.]" Am. Compl. at 3 ¶ 10; *see also id.* at 6-7 ¶ 21, 11 ¶ 50 (mentioning "the Governor's school reentry plan"). But Plaintiffs' unsupported averments do not give rise to a viable claim for relief.  "[Courts] are not bound to accept legal conclusions couched as factual allegations." *United States ex rel. Hanlon v. Columbine Mgmt. Servs.*, 676 Fed. Appx. 787, 790 (10th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678); *cf. Peterson v. Martinez*, 707 F.3d 1197, 1206 (10th Cir., 2013) (finding a plaintiff's allegations that the Director of the Colorado Department of Public Safety was responsible for administering concealed handgun license reciprocity was a bare legal assertion, as the complaint merely stated the defendant had a legal duty to enforce the Colorado handgun licensing statute without any supporting factual allegations or other legislative or administrative citations); *McIntyre v. Kelly*, No. 18-2617-DDC-GEB, 2020 U.S. Dist. LEXIS 97225, at *10 (D. Kan. June 3, 2020) (concluding that a complaint's allegations that "Governor Kelly is responsible for ensuring all Kansas executive

agencies comply with all applicable laws[,]" "has the authority to issue certain executive orders, and is responsible for appointing agency secretaries" are "'bare legal assertions' stated 'without any supporting factual allegations'" (quoting *Peterson*, 707 F.3d at 1206); *see also id.* at *11 (holding that an allegation that "Governor Kelly 'has used her executive authority to manage' various executive agencies in Kansas" was also a legal conclusion couched as a fact without any factual support).

Plaintiffs' threadbare legal conclusion that the Governor and Secretary Kunkel issued the Reentry Guidance is insufficient to establish causation for standing purposes. First, such an assertion is plainly incorrect. New Mexico law explicitly authorizes the PED to issue the Reentry Guidance. The PED is vested with the powers and duties to related to the control, management, and direction of all public schools in this state. *See* NMSA 1978, § 22-2-1(A) (2004); *see also* N.M. Const. Art. XII, Sec. 6(A) (creating PED, which "shall have such powers and duties as provided by law"); N.M. Const. Art. XII, Sec. 6(D) ("The secretary of public education shall have administrative and regulatory powers and duties, including all functions relating to the distribution of school funds and financial accounting for the public schools to be performed as provided by law."). The PED determines the policies for the operation of all public schools. *See* NMSA 1978, § 22-2-2 (2004); *see also* NMSA 1978, § 22-2-8 (2003) (providing that the "[PED] shall prescribe standards for all public schools in the state" including standards for "organization and administration of education," "the physical condition of public school buildings and grounds," and "educational facilities of public schools"). Consistent with state law, the Reentry Guidance itself states, "The *New Mexico Public Education Department* . . . is providing the following guidance to support the state's districts, charter schools and communities in determining their plans and strategies for reopening schools in 2020–2021." *See* Ex. A at 2 (emphasis added). Second, the

Amended Complaint contains no allegations that the Governor or Secretary Kunkel took any action pursuant to the PHERA or the PHA in regard to the decision that certain school districts continue to use remote instruction. Therefore, Plaintiffs' incorrect and speculative inference in their Amended Complaint fails to demonstrate adequate causation for standing. *See Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1157 (10th Cir. 2005).

Additionally, Plaintiffs fail to assert how the Governor and Secretary Kunkel caused the alleged injuries related to the IDEA. Plaintiffs make generalized legal conclusions that the "current COVID mandates in effect from the Governor and Secretary of Health" deny students with disabilities from receiving a the least restrictive environment requirement because students with disabilities are denied in-person learning with students without disabilities. Am. Compl. at ¶¶ 14-15, 74. This legal conclusion is entirely inaccurate and should not be considered by the Court. Plaintiffs fail to point to any "mandate in effect from the Governor and [Secretary Kunkel]" that prohibits in-person learning at public schools. As discussed previously, the PED is the entity that issues directives regarding instruction models in public schools. Furthermore, the Reentry Guidance clearly provides that school districts in the remote category may provide small group, in-person learning for PreK-3rd graders, special education students of any age, and students needing additional support of any age. *See* Ex. B. Thus, the entity responsible for determining which students in those groups can receive in person learning are the local school districts—not the Governor or Secretary Kunkel. *See id.* Therefore, it is the independent action of the school districts, who are not parties to this case, that are causing Plaintiffs' alleged injuries. *See Lujan*, 504 U.S. at 560.

Based on the foregoing, Plaintiffs have no standing to assert any claims against the Governor and Secretary Kunkel, as failed to demonstrate that their injuries are "fairly traceable"

to any of their actions. Moreover, if Plaintiffs were permitted to proceed with their claims against the Governor and Secretary Kunkel, this would lead to the Governor and any of her cabinet members being named in every suit challenging the constitutionality of any statute or regulation no matter how attenuated their connection to it. This outcome is undesirable, a drain on the State and this Court's resources, and contrary to the very purpose of standing in general. *See 1st Westco Corp. v. School Dist.*, 6 F.3d 108, 116 (3rd Cir. 1993).

     **B.**     **Plaintiffs fail to demonstrate their injury will be redressed by a favorable decision by this Court**

Plaintiffs also lack standing to claims against the Governor, Secretary Kunkel, and Secretary Stewart because they fail to establish redressability. "[R]edressability and traceability [often] overlap as two sides of a causation coin." *Nova Health Sys*., 416 F.3d at 1159 (internal quotation marks and citation omitted). In order to establish redressability, a "plaintiff must also establish it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Committee to Save the Rio Hondo v. Lucero*, 102 F.3d 445, 452 (10th Cir. 1996); *cf. Nova Health Sys*, 416 F.3d at 1159 (10th Cir. 2005) (dismissing a claim, in part, for lack of redressability where a favorable "judgment would likely do nothing to prevent [the harm], and thus would not be substantially likely to redress [the plaintiff's] injury in fact").

Here, Plaintiffs seek a preliminary and permanent injunction enjoining the Governor, Secretary Kunkel, and Secretary Stewart from prohibiting in-person learning. *See* Am. Compl. at 15. However, the requested injunction is far from a guarantee that in-person instruction will occur. First, an injunction entered against the Governor and Secretary Kunkel regarding in-person learning will not alter the current learning models, as it is the PED that issued the Reentry Guidance pursuant to its powers and duties related to the control, management, and direction of all public schools in this state.  *See* NMSA 1978, § 22-2-1(A) (2004); *see also* N.M. Const. Art. XII, Sec.

6(A); *Bronson v. Swensen*, 500 F.3d 1099, 1111 (10th Cir. 2007) ("The redressability prong is not met when a plaintiff seeks relief against a defendant with no power to enforce a challenged statute.").

Second, in regard to each individual Defendant, Plaintiffs fail to demonstrate that the requested injunction will likely lead to in-person learning because local school districts have the discretion regarding how to operate. While the Reentry Guidance contains requirements all school districts must adhere to for each instructional model, there is no requirement that eligible districts must immediately begin hybrid instruction. *See generally* Exs. A, B. Instead, school districts may decide to delay in-person learning and continue to use remote instruction. Indeed, many school districts have already made this decision in order to prioritize the safety of their students.[16] Plaintiffs must include all superintendents as defendants in this case to obtain the requested relief. Thus, Plaintiffs have failed to demonstrate redressability, as it is uncertain (at best) whether any school district in the counties at issue will allow in-person learning should they be given the option. *Cf. Bronson*, 500 F.3d at 1111 (finding no redressability in case seeking to enjoin county clerk from enforcing a criminal statute banning polygamy because local prosecutors would not be obliged to follow such a judgment);  *Amato v. Elicker*, No. 3:20-cv-464 (MPS), 2020 U.S. Dist. LEXIS 87758, at *15-16 (D. Conn. May 19, 2020) (holding that the plaintiffs' businesses closed by the governor's executive orders in response to COVID-19 pandemic, failed to meet the redressability requirement because they failed to allege they would reopen their business or that customers would return if the court enjoined enforcement of the executive order); *Ass'n of Am. Physicians & Surgs v. Fda*, No. 1:20-CV-493, 2020 U.S. Dist. LEXIS 178454, at *17 (W.D. Mich.

---

[16] *See School Reentry Status*, *supra* note 19; Barron, *supra*, note 20; *APS Extends Remote Learning Through First Semester*, *supra* note 19.

Aug. 14, 2020) (holding that the Association of American Physicians & Surgeons, seeking to have the court order the FDA to make hydroxychloroquine widely available for distribution as prophylactic against COVID-19, failed to demonstrate redressability because "state medical boards could still decide that such a prescription runs against best practices"). Therefore, Plaintiffs' claims against the Governor, Secretary Kunkel, and Secretary Stewart should be dismissed due to lack of standing.

### III.   Plaintiffs fail to state a plausible claim for relief against the Governor and Secretary Kunkel because they do not allege sufficient facts to demonstrate that those defendants caused the issuance of the Reentry Guidance

Plaintiffs also allege a number of claims pursuant to § 1983. *See* Am. Compl. at 1 ("Plaintiffs . . . hereby bring this action pursuant to 42 U.S.C.A. § 1983[.]"). As the basis for their § 1983 suit, Plaintiffs allege violations of the Equal Protection clause, the Due Process clause, and the IDEA. *See id.* at 1-2. "Section 1983 provides a private cause of action for violations of federal statutes, as well as for constitutional violations." *Rural Water Dist. No. 1 v. City of Wilson*, 243 F.3d 1263, 1274 (10th Cir. 2001). Specifically, § 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

By its plain language, § 1983 "requires plaintiffs to show causation, imposing liability on a defendant who 'subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights[.]'" *Lippoldt v. Cole*, 468 F.3d 1204, 1219 (10th Cir. 2006) (quoting § 1983). In alleging a § 1983 action against a government agent, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556

U.S. at 676. Thus, "[a] defendant may not be held liable under § 1983 unless he or she subjected a citizen to the deprivation, or caused a citizen to be subjected to the deprivation[,]" and "[a] plaintiff must allege factual causation—i.e. 'but for' causation—in order to state a claim under § 1983." *Id.* (internal quotation marks and citations omitted); *see also Dodds v. Richardson*, 614 F.3d 1185, 1200 (10th Cir. 2010) (stating that § 1983 require plaintiffs to "prove each defendant took some act with the constitutionally applicable state of mind that caused the alleged constitutional violation"); *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002) (stating that a § 1983 plaintiff must demonstrate that the conduct of a person acting under color of law "proximately caused" a violation of rights protected by the federal Constitution or law).

Here, Plaintiffs' claim the Reentry Guidance issued by the PED violates the U.S. Constitution and the IDEA. *See* Am. Compl. at 3 ¶ 10, 11 ¶ 50. Thus, Plaintiffs must allege that each Defendant was a cause of promulgating the purportedly unlawful Reentry Guidance. Yet Plaintiffs' Amended Complaint is totally devoid of any specific allegations showing that the Governor or Secretary Kunkel had anything to do with issuing the Reentry Guidance. *See generally* Am. Compl. Instead, Plaintiffs make the conclusory (and inaccurate) assertion that "the Governor of New Mexico pursuant to [] her authorities under the Public Health Emergency Response Act, her Secretary of Health's authorities under the Public Health Act and the authorities vested in her Secretary of Education issued [the Reentry Guidance.]" Am. Compl. at 3 ¶ 10; *see also id.* at 6-7 ¶ 21 ("The actions of the Defendants, all of them, acting individually under the color of law (the Governor acting through her executive orders, the Secretary of Health's Public Health Act and Public Health Emergency Response Act order and the Secretary of Education's guidelines or operating order for New Mexico's public schools,) to close certain counties schools to in-person learning, are arbitrary and capricious, lacking any justification in law or science, and were done in

retaliation for punitive purposes based upon a perception that these communities were defying the authority of the Governor."); *id.* at 11 ¶ 50 (asserting that a class action is appropriate because "Defendants have acted on grounds that apply generally to the classes—namely the Governor's school reentry plan that denies students from 10 counties the equal opportunity for an equal education and denies students with special needs critical components of a FAPE ensured by the IDEA"). But there is absolutely no allegation that the Governor issued an executive order or that Secretary Kunkel issued a public health order leading to any of the purported violations in this case—which stem solely from the PED's Reentry Guidance.

Plaintiffs' conclusory accusations are insufficient to state a cause of action under § 1983 against the Governor and Secretary Kunkel. *See Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "[W]hile the court must accept all the factual allegations in the complaint as true, it is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *FDIC*, 222 F. Supp. 3d at 1014 (Browning, J.) (quoting *Iqbal*, 556 U.S. at 678). Plaintiffs' allegation that the Governor and Secretary Kunkel issued the Reentry Guidance is clearly a legal conclusion. *Cf. McIntyre*, 2020 U.S. Dist. LEXIS 97225, at *10 (concluding that a complaint's allegations that "Governor Kelly is responsible for ensuring all Kansas executive agencies comply with all applicable laws[,]" "has the authority to issue certain executive orders, and is responsible for appointing agency secretaries" are "'bare legal assertions' stated 'without any supporting factual allegations'" (quoting *Peterson*, 707 F.3d at 1206); *see also id.* at *11 (holding that an allegation that "Governor Kelly 'has used her executive authority to manage' various executive agencies in Kansas" was also a legal conclusion couched as a fact without any factual support). Similar to *McIntyre*, while Defendants do not dispute that the Governor and Secretary Kunkel have certain powers under the PHERA and

the PHA, there is absolutely no factual allegation that they used such powers to issue the Reentry Guidance or otherwise prohibit any child in the affected counties from attending school in-person. *See generally* Am. Compl. Indeed, Plaintiffs fail to even allege that the Governor or Secretary Kunkel informally directed the PED to issue the Reentry Guidance. Accordingly, the Court should reject Plaintiffs' legal conclusion that the Governor and Secretary Kunkel issued the Reentry Guidance.

Moreover, Plaintiffs' legal conclusion that the Governor and Secretary Kunkel issued the Reentry Guidance is false. The Reentry Guidance states, "The *New Mexico Public Education Department* . . . is providing the following guidance to support the state's districts, charter schools and communities in determining their plans and strategies for reopening schools in 2020–2021." Ex. A at 2 (emphasis added). New Mexico law also clearly shows that the PED is responsible for management of public schools. *See* N.M. Const. Art. XII, Sec. 6; § 22-2-1(A); § 22-2-2; § 22-2-8; *see also Ellenberg v. N.M. Military Inst.*, 478 F.3d 1262, 1270 (10th Cir. 2007) ("NMPED is the 'sole educational agency of the state for the administration or for the supervision of the administration of any state plan established or funds received by the state by virtue of any federal statute relating to aid for education' for the state's general public school system." (quoting NMSA 1978, § 22-9-2 (1967, amended 2011))); *Peterson v. Kunkel*, No. 1:20-cv-00898-WJ-CG, at 4 (D.N.M. Oct. 2, 2020) (stating that "[o]n or about June 20, 2020, the [PED] . . . published a document providing considerations, recommendations, best practices, and minimum requirements for public and charter schools in New Mexico" and citing the Reentry Guidance).

Left with only incorrect legal conclusions unsupported by any specific factual allegations that the Governor and Secretary Kunkel's caused the issuance of the ostensibly offensive Reentry Guidance, Plaintiffs' Amended Complaint fails to state a § 1983 claim against them for which

relief may be granted. *See FDIC*, 222 F. Supp. 3d at 1014 (D.N.M. 2016) (Browning, J.) ("A complaint fails to state a claim when it makes conclusory allegations of liability without supporting factual content."). Accordingly, this Court should dismiss the Governor and Secretary Kunkel.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the Governor, Secretary Kunkel, and Secretary Stewart from this action for lack of standing. Alternatively, this Court should dismiss the Governor and Secretary Kunkel for Plaintiffs' failure to demonstrate the requisite causation required for their claims.

Respectfully submitted,

_____
Matthew L. Garcia,
*Chief General Counsel to*
*Governor Michelle Lujan Grisham*
Maria S. Dudley
*Associate General Counsel to*
*Governor Michelle Lujan Grisham*
Kyle P. Duffy
*Associate General Counsel to*
*Governor Michelle Lujan Grisham*
490 Old Santa Fe Trail, Suite 400
Santa Fe, New Mexico 87501
matt.garcia@state.nm.us
maria.dudley@state.nm.us
kyle.duffy@state.nm.us

**CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2020, I filed the foregoing through the New Mexico

Electronic Filing system, which caused all counsel of record to be served by electronic means.

Respectfully submitted,

_____

Matthew L. Garcia